[Civ. No. 9250.    Fourth Dist., Div. Two.    Apr. 28, 1969.]

JOHN GREGORY STEWART, as Receiver, etc., Petitioner
and Respondent, v. STATE OF CALIFORNIA et al.,
Objectors and Appellants.

Thomas C. Lynch, Attorney General, Mario A. Roberti and
Edward J. Horowitz, Deputy Attorneys General, for Objectors
and Appellants.

Jones & Daniels and Robert E. Jones for Receiver and Respondent.

McGOLDRICK, J. pro tem.*—The State of California acting through the Department of Employment and the State Board of Equalization, hereinafter referred to as the State, appeals from an order of the Superior Court of Riverside County which approved, allowed and settled the final account of the Receiver, John Gregory Stewart, hereinafter referred to as the Receiver, and exonerated his bond.

This order was made by the court despite the State's objections and a request for a surcharge even though the admitted facts established that the Receiver failed to pay trust funds obtained and taxes incurred during the receivership.

The Steak Ranch and Waterfalls Hotel were in financial difficulties. Mr. Stanley T. Spiegelman was appointed Receiver. He served but a short time and, by stipulation, was discharged and respondent, John Gregory Stewart, took his place. Mr. Stewart was appointed upon the same terms and conditons as Mr. Spiegelman. His order of appointment stated, in part: "That said Receiver, subject to further Order of this Court, shall operate and conduct the business . . . in ordinary and usual course, . . . and the said Receiver is authorized to employ . . . employees . . . and to purchase . . . supplies and services, and to pay therefore . . . out of funds that shall come into his possession as such Receiver, and to do all things and to incur the risks and obligations ordinarily incurred by owners, managers and operators of similar businesses and enterprises, as such Receiver, and that no such risk or obligation so incurred shall be the personal risk or obligation of the Receiver but a risk or obligation of the receivership estate."

Mr. Stewart was appointed March 30, 1967, and served until August 21, 1967, at which time the court discharged him and ordered that he file a final account and report.

Briefly stated, the Receiver operated a restaurant, bar and hotel, and during his management there was cash flow income of over $77,000, together with nearly $5,000 from the former Receiver. The account shows that the operation of the business during the receivership period resulted in a loss. Substantial accounts payable existed at the time of the Receiver's discharge in addition to the tax claims of the State of California,

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

the subject of this appeal. An examination of the accounting establishes that the business was insolvent at the time of the discharge of the Receiver.

The Receiver collected sales tax reimbursement from customers on tangible sales and also made deductions from the employees' pay checks under the provisions of the Unemployment Insurance Code. He did not separate or segregate these funds after they were collected and withheld. The tax sums due were not paid over but were reported by the Receiver to the appropriate state agencies and are set forth in the final account and report. This accounting shows that he owed $1,532.45 (Schedule E) and $36 (Schedule F) on State Disability Insurance, and the sum of $2,658.03 (Schedule E) on incurred sales taxes; accrued penalties and interest were due on certain of these amounts. A State Board of Equalization "floor stock tax" of $44.50 was also payable (Schedule E).

The State of California, acting through the Department of Employment and the State Board of Equalization, filed objections to the accounting and sought to prevent the discharge of the Receiver. The State requested a surcharge against the Receiver for the tax amounts due.

After hearing the petition for approval of the final account, the trial court issued its minute order which approved, allowed and settled the final account and report and exonerated the Receiver's bond.

The State contends that the trial court abused its discretion in settling the Receiver's account and exonerating his bond. The Receiver contends that the State is seeking to hold him personally liable when, under the order of appointment, he was expressly relieved of any personal liability while acting as Receiver.

The question on appeal is whether a Receiver who collects and withholds sales and unemployment disability taxes from third parties owes a duty in his capacity as a Receiver to pay such funds to the State of California on a priority basis over ordinary debts in case of the insolvency of the receivership estate.

The Receiver in our case misinterprets the State's position. Throughout his brief he refers to the State seeking to impose upon him a personal liability. The State has emphatically maintained that its position is that it is not seeking to impose personal liability upon the Receiver but rather seeks to have the order set aside and thus be given an opportunity to proceed

against the bond for Receiver's failure to properly discharge his duties as a Receiver.

A court-appointed fiduciary may be surcharged for failure to pay taxes in operating the business of an estate. (*Estate of Dwyer,* 168 Cal.App.2d 264 [335 P.2d 718].) In *Dwyer,* an administratrix who continued her decedent's business, under court order, failed to pay United States taxes withheld from employees and was held accountable and subject to surcharge as a trustee with respect to the funds so withheld. The court stated: "Regardless of the finding of the trial court of lack of fraud or gross neglect, there was a violation of her duty as such administratrix to follow the law in this respect. Accordingly, she should be held accountable as such administratrix and should be surcharged. . . ."

Public policy involved with respect to the duties of fiduciaries to pay certain priority taxes is well illustrated in an article discussed by the author in one of the chapters in California Estate Administration (Cont.Ed.Bar) § 18.7, p. 521 where the following statement is made: "Where the representative operates the deceased retailer's business and incurs sales tax liability after the date of death, . . . [T]hat liability is not considered a mere claim against the estate, or an expense of administration, but is treated as a tax on the right of succession entitled to priority over general claims against the estate. Thus, it must be paid when it becomes due, and not merely in the normal course of administration. *Estate of Morris* (1940) 37 C.A.2d 155, 99 P.2d 294. Indeed, *Morris* contains language indicating that such a sales tax liability is a kind of super expense of administration and is entitled to priority, at least in time of payment, over all other administrative expenses. It is further pointed out that prompt payment would save the estate the added expense of interest and penalties. *One might safely predict that the courts would take the same attitude if the state tax involved were unemployment insurance contributions, since the policy underlying payment of these taxes is, if anything, stronger than that underlying sales taxes. Both sales tax and unemployment insurance contributions bear interest from the date when due and payable to the date of payment.* Rev. & T.C., § 6591; Un.Ins.Co., § 1129; *People* v. *Warfel,* (1958) 162 C.A.2d 400, 328 P.2d 456." [Italics added.]

In the case of *Kirk* v. *Kirk,* 243 Cal.App.2d 580, 582 [52 Cal.Rptr. 725], relied on by both parties, the court stated that under federal law a receiver is personally liable to the United

States to the extent he pays other creditors when there are debts owing to the United States or fails to give priority to federal tax liens. (31 U.S.C. § 191, 192.) The court in both *Dwyer* and *Kirk* recognized that a receiver is subject to a surcharge if he fails to remit taxes. ▋ It is settled law that sales tax liability incurred during the operation of an estate by a court-appointed fiduciary is entitled to the highest priority in payment. (*Estate of Morris,* 37 Cal.App.2d 155, 157 [99 P.2d 294].) In *Morris,* the court relied upon established federal cases upholding the theory that the maintenance of government and public welfare is completely dependent upon the collection of taxes. The *Morris* court stated: ''We are of the opinion the retail sales taxes which were found to be due from the estate are not to be classified merely as ordinary expenses of administration. On the contrary, they constitute an excise tax imposed by the state for the privilege of conducting a business and for selling at retail tangible personal property.

'' . . . . . . . . . . . .

''It is therefore the duty of an administrator to pay those taxes promptly and to thereby save the estate the necessity of incurring the added expense of interest and penalties. Since the prompt payment of retail sales taxes is statutory, a claim by the state therefore is entitled to priority. (*Liberty Mutual Ins. Co.* v. *Johnson Shipyards Corp.,* 6 Fed. (2d) 752, 756.)

'' . . . . . . . . . . . .

''The principle announced in the preceding quotation to the effect that a claim for federal taxes is paramount to ordinary claims for the reason that the very maintenance of the government is dependent on their payment, is peculiarly applicable to the present case [dealing with sales taxes] and to the payment of excise taxes which are provided for by statute.''

In *Pauley* v. *California,* 75 F.2d 120, the court discusses the prerogative of the State of California to priority payment of taxes out of estates of an insolvent debtor as against all persons and antecedent liens. In *Pauley,* the priority mentioned in *Morris* was applied to the Motor Vehicle Tax Act.

The *Kirk* case was also discussed in *Pacific Indem. Co.* v. *Workmen's Comp. App. Bd.,* 258 Cal.App.2d 35, 41 fn. 6 [65 Cal.Rptr. 429], where it is stated: ''In *Kirk* v. *Kirk,* 243 Cal.App.2d 580, 583 (52 Cal.Rptr. 725), it is held that liability for payment to the State of California (Depart-

ment of Employment) for unemployment contributions is that of the receivership where such liability accrued during the receivership, and constitutes an expense of administration, and not that of the receiver personally . . . 'A judgment against a receiver should be against him in his official capacity, leaving the matter of its enforcement to be determined by the court having jurisdiction of the receivership.' (42 Cal.Jur.2d, Receivers, § 93, p. 388; see also, *Freeman* v. *Lynch, supra*; *Bartlett* v. *Cicero Light H. & P. Co.*, 177 Ill. 68 [52 N.E. 339, 340, 69 Am.St.Rep. 206].) ''

The sections of the code relating to sales taxes and state disability and unemployment insurance taxes support the State's contention that these taxes are entitled to priority in payment where insolvency is involved. (Rev. & Tax. Code, § 6756; Unemp. Ins. Code, §§ 986, 1701.)

Here the Receiver's accounting shows that there was a substantial cash flow through his hands during the period he operated the business. It also shows that the business was insolvent. His accounts clearly indicate the tax obligations to the State. This is all admitted by the Receiver but still he seeks haven behind the court order appointing him that he is not personally liable. His citations of authority are directed to the disclaimer of personal liability. *Kirk* v. *Kirk, supra,* he contends, supports his proposition that the State of California does not have such formidable statutes as under federal law imposing personal liability on the Receiver. He also endeavors to distinguish *Morris,* claiming that there was no issue of personal liability of the administratrix involved, and *Dwyer,* by claiming that the administratrix was surcharged for unpaid federal withholding taxes solely by reason of specific provisions of the United States Code.

Federal statutes do impose personal liability on Receivers. However, whether or not personal liability applies in federal collection of taxes, and not to those of the State, is immaterial since the State is not seeking personal liability against the Receiver.

A Receiver is but the hand of the court to aid it in preserving and managing the property for the benefit of those to whom it may be ultimately determined it belongs. (*Lesser & Son* v. *Seymour*, 35 Cal.2d 494 [218 P.2d 536]; *Title Ins. & Trust Co.* v. *California Dev. Co.*, 159 Cal. 484 [114 P. 838].)

A trial court also has broad discretion to confirm the accounting of the Receiver. (75 C.J.S., p. 1036; *Corell* v. *Reliance Corp.*, 295 Mich. 45 [294 N.W. 92]; *Cocke* v. *South-*

*land Life Ins. Co.* (Tex. Civ. App.) 75 S.W.2d 194; 2 Clark, Law of Receivers, § 383, p. 645 (3d ed. 1959); *William* v. *Des Moines Loan & Trust Co.*, 126 Iowa 22 [101 N.W. 277].)

Notwithstanding the broad discretion of the court to confirm the Receiver's accounts, it is a clear abuse of this discretion to approve, settle and allow a Receiver's account and exonerate the bond where it appears that there were substantial funds in the hands of the Receiver to pay the State taxes which are to be held as trust funds and where any creditors of a nonpriority class were paid.

Our statutes impose a specific duty upon the Receiver to pay outstanding sales tax and state disability unemployment insurance taxes in this case as expenses of administration of first priority. (Rev. & Tax. Code, § 6756; Unemployment Ins. Code, §§ 986, 1701.)

The bond furnished by the Receiver in the amount of $25,000 is conditioned that the Receiver shall faithfully discharge his duties in this action and is, of course, given to protect those who might suffer loss from his failure to discharge his duties and administer his business in accordance with law and properly account for funds coming under his control. (2 Clark on Receivers (3d ed.) § 420, p. 706.)

The liability of the Receiver in this case exists in his representative capacity charged with the duty by law to pay certain taxes having priority over general claims. His bond is designed to protect the State against the Receiver's failure to discharge his duty to pay the State first before general creditors.

For the reasons stated, the order appealed from is reversed. The Superior Court of Riverside County is directed to surcharge the Receiver in the amount of sales tax and state disability insurance liability which the Receiver has reported in his accounts is payable to the State or in such other amounts the court shall determine are due.

McCabe, P. J., and Kerrigan, J., concurred.